2026 IL App (2d) 250189-U
No. 2-25-0189
Order filed July 15, 2026

**NOTICE:** This order was filed under Illinois Supreme Court Rule 23(b) and is not precedential except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee,

v.

KESHON D. PLEDGER, Defendant-Appellant

Appeal from the Circuit Court of Kane County.
Honorable Salvatore LoPiccolo, Jr.,
No. 20-CF-2381

PRESIDING JUSTICE KENNEDY delivered the judgment of the court.
Justices Jorgensen and Schostok concurred in the judgment.

**ORDER**

¶ 1   *Held*:   We affirm the second-stage dismissal of defendant's postconviction, as his counsel provided reasonable assistance.

¶ 2   Defendant, Keshon D. Pledger, appeals a judgment granting the State's motion to dismiss his petition for relief under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2024)). On appeal, he argues that postconviction counsel failed to comply with Illinois Supreme Court Rule 651(c) (eff. July 1, 2017) in that (1) counsel filed a defective certificate of compliance) and (2) counsel did not provide reasonable assistance. We affirm.

¶ 3                                        I. BACKGROUND

¶ 4      On June 22, 2022, defendant pleaded guilty to one count of attempted murder (720 ILCS 5/8-4(a), 9-1(a)(1) (West 2020)). In return for the plea, the State agreed to recommend an aggregate prison term of 26 years, which included the minimum six years for the offense (see 720 ILCS 5/8-4(a), 9-1(a)(2), 730 ILCS 5/ 4.5-25(a) (West 2020)) plus a mandatory add-on of 20 years based on his having personally discharged a firearm in committing the offense (720 ILCS 5/8-4(c)(1)(C) (West 2020)). Per the agreement, the trial court dismissed the 22 remaining charges, including aggravated domestic battery (*id.* § 12-3.3(a)), possession of a stolen firearm (*id.* § 24-3.8(a)), unlawful use or possession of weapons or ammunition by a convicted felon (*id.* § 24-1.1(a)), and possession of a firearm without a valid firearm owner's identification card (430 ILCS 65/2(a)(1) (West 2020)).

¶ 5      At the hearing on the plea, the trial court heard the following factual basis. At a trial, Jackie Musgray would identify defendant as her former intimate partner and the father of her three children. She would testify that, on December 22, 2020, he was in her home; that they began to argue; that defendant locked Musgray out of the building, retrieved a firearm, and personally discharged the gun four times, each time striking Musgray. After duly admonishing defendant, who told the trial court that he was entering the plea voluntarily and did not need more time to consult his attorney, the court accepted the plea and sentenced him per the agreement.

¶ 6      On August 15, 2022, defendant filed a *pro se* motion to reduce the sentence. The trial court denied the motion because it was untimely and defendant had not moved to withdraw his plea. Defendant appealed. We dismissed the appeal because defendant had failed to file a timely postjudgment motion (see Ill. S. Ct. R. 604(d) (eff. Jan. 1, 2023); *People v. Flowers*, 208 Ill. 2d 291, 303 (2003)). *People v. Pledger*, No. 2-22-0343 (2003).

¶ 7　On December 8, 2023, defendant filed a *pro se* petition under the Act. The petition alleged that defendant's trial counsel was ineffective for (1) failing to prepare for trial or sufficiently consult with defendant, (2) refusing to pursue defendant's right to a speedy trial, (3) failing to share discovery with defendant, (4) failing to inform defendant of discovery before the entry of the guilty plea, (5) failing to visit the crime scene and failing to investigate possible defenses of self-defense and/or accidental discharge of the firearm, (6) failing to procure an expert witness to review the scientific evidence in the case; and (8) "pushing" defendant to plead guilty by failing to investigate possible defenses.

¶ 8　On February 5, 2024, the trial court advanced the proceeding to the second stage under the Act and appointed counsel for defendant. On February 3, 2025, counsel filed an amended postconviction petition. The petition claimed that defendant's trial counsel was ineffective for (1) failing to share or discuss with defendant the discovery produced by the State, (2) failing to assert defendant's statutory right to a speedy trial (see 725 ILCS 5/103-5 (West 2022)), and (3) failing to investigate possible defenses, including accident and self-defense.

¶ 9　The amended petition attached several exhibits. One is a report by an Elgin police detective. It stated that, on the afternoon of December 22, 2020, several patrol officers were dispatched to an apartment building to investigate an alleged shooting. Musgray was lying on the sidewalk and appeared to have been shot. Taken to a local hospital, she underwent several lengthy surgeries. The report continued:

　　　　"It was found that there had been five children present when the shooting happened. They were the victim's children (fathered by the defendant ***)[1]. Information gathered

_____

[1]The factual basis at the guilty-plea hearing stated that defendant and Musgray had only three children together. Apparently, two of the children were those of Chrystal Stokes.

- 3 -

from the children indicated that [defendant] was engaged in a verbal altercation with [Musgray] which became physical when the defendant began choking [Musgray]. [Musgray] called out to her children to help her. [She] then tried to remove [defendant] from the apartment, but [she] was forced outside of the apartment by [him]. [Defendant] then retrieved a handgun from under the living room sofa and went and shot [Musgray]. It was further established that [defendant] had fled on foot after the shooting. ***

One nine-millimeter shell casing was located where [Musgray] had been laying on the ground. The area in which [defendant] had fled was searched and in that direction a 9mm handgun was located with the same manufacturer ammunition in the magazine as the shell casing that had been located near [Musgray].

The recovered handgun *** had been reported as stolen out of Markham[,] Illinois on or about 11/03/2020.

* * *

Chrystal M. Stokes *** lives *** directly next to *** where [Musgray] lives. She advised she was just getting back from work when she saw [Musgray] outside [the building] and that [Musgray] was screaming for help. Chrystal got her own kids inside her apartment *** and [then] heard several gun shots. Chrystal went back outside and saw [Musgray] on the ground bleeding.

* * *

Defendant *** was interviewed at the Elgin Police Department ***. [Defendant] admitted that he had been inside *** with *** Musgray. *** A verbal argument had started between [them].[Defendant] said that he had a gun in his waistband area at the time. *** [Defendant] said that he was inside the apartment and that the victim had attacked him.

- 4 -

Then as the victim was leaving the apartment, maybe going to the neighbors, [defendant] took out the handgun and fired it at the victim, shooting her. [Defendant] then ran *** and threw the gun and gun magazine down before he entered [an apartment in the same building where Musgray resided] where he was located by [the police].

*** On 12/23/2020 [Musgray] was interviewed [at the hospital] *** by [police detectives]. [Musgray said that] [a]n argument started because [she] wanted [defendant] to leave. [Musgray] ended up just outside of her apartment and was trying to get her neighbor Chrystal's help when she was shot by [defendant] and fell to the ground.

A criminal history check ***showed that [defendant] had twenty[-]one previous arrests with six listed convictions. One of those convictions was for armed robbery."

¶ 10 Another exhibit is defendant's unsworn "affidavit." It states:

"[Trial counsel] stated to me *** he would send a P.I. to investigate the crime scene. The ample evidence was raising the claim of self defense. *** Musgray had already told officer's [*sic*] on the scene that she was upset about me being out all night which ultimately lead [*sic*] her to have my 5yr. [*sic*] old daughter to [*sic*] retrieve a kitchen knife which was also on the scene of this crime. That wepon [*sic*] was used to stab/poke me in my neck, were [*sic*] I was taken to the hospital for as well. Mrs. [*sic*] Musgray also called and left various voicemails when [trial counsel] was unreachable, stating her part in this incident. The Investigation never took place. [Trial counsel] was ineffective for failing to do or raise the claim of self defense. [Trial counsel] was ineffective for his failure to assert a theory of self-defense."

¶ 11 The amended petition also attached defendant's unsworn "affidavit" alleging that his trial counsel told him that he would investigate the possible self-defense claim but never did so;

- 5 -

defendant's unsworn "affidavit" summarizing a discussion in which trial counsel allegedly "pushed [defendant] to take a plea deal"; and an affidavit from an investigator for the public defender stating that she attempted to contact Musgray but was unsuccessful.

¶ 12 Postconviction counsel filed a certificate of compliance with Rule 651(c). As pertinent here, it stated:

"4. *** Defense Counsel has reviewed all filings by [defendant] or on behalf of [defendant].

5. *** Defense Counsel has reviewed the records contained within the court file in [the underlying case], obtained, and reviewed a copy of the transcripts, including the trial and sentencing transcripts filed within the Kane County Circuit Clerk's Office.

6. *** Defense counsel has consulted with [defendant] in person through legal calls and by mail to the extent necessary to adequately represent his contentions of error in the proceedings and deprivation of constitutional rights and thereafter filed an Amended Successive [*sic*] Post-Conviction Petition."

¶ 13 The State moved to dismiss the amended postconviction petition. On the first claim, the State argued that defendant had no constitutional right to examine discovery materials, counsel's decisions on this matter were trial strategy, and there was no reason to believe that counsel's discovery decisions influenced defendant's decision to plead guilty. On the second claim, the State argued that defendant's guilty plea waived his speedy-trial right, the record did not support defendant's calculation of the speedy-trial period, especially given the supreme court's 2020 order tolling the statute because of the COVID-19 epidemic (Ill. S. Ct. M.R. 30370 (eff. Mar. 3, 2020)), and the decision whether to invoke the speedy-trial statute was counsel's prerogative, which he exercised reasonably. On the third claim, the State argued that defendant's guilty plea waived the

defenses, that the evidence negated any claim of accident or self-defense, and that the petition did not name any possible expert witnesses or present anything but speculation to support a possible defense.

¶ 14    On May 5, 2025, the trial court granted the State's motion to dismiss the amended petition. The court found that, taking the amended petition's well-pleaded allegations of fact as true, it did not make a substantial showing of a constitutional violation. See *People v. Domagala,* 2013 IL 113688, ¶ 13. The court's thorough written order stated as follows.

¶ 15    A claim of ineffective assistance of counsel requires the defendant to show (1) unreasonable performance and (2) prejudice, which, in the context of a judgment based on a guilty plea, means a reasonable probability that, but for counsel's deficient performance, the defendant would not have pleaded guilty but would have insisted on going to trial. *People v. Hall*, 217 Ill. 2d 324, 335 (2005); see generally *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

¶ 16    On the claim based on trial counsel's alleged failure to share discovery with defendant, the court noted that there was a strong presumption that counsel's decisions were sound trial strategy. Defendant could rebut this presumption only by showing that the allegedly withheld material cast doubt on the State's ability to prove him guilty or was otherwise relevant to his decision to plead guilty. See *People v. Walker*, 2019 IL App (3d) 170374, ¶ 18. Defendant had not met his burden, because the amended petition did not "provide any information regarding any discovery provided by the State which shows that counsel withheld discovery information" that met the *Walker* test. Moreover, both the factual basis stated at the guilty-plea hearing and the police report attached to the amended petition severely undermined any claim of either accident or self-defense.

¶ 17    On the second issue, trial counsel's alleged failure to invoke defendant's statutory right to a speedy trial, the trial court noted first that, on December 28, 2020, trial counsel filed a speedy-

trial demand. At that time, per the supreme court's COVID-19 order, defendant's "speedy trial term did not begin until October 1, 2021." Further, the record showed that the delay between September 15, 2021, and April 29, 2022, was attributable to defendant. On June 22, 2022, when defendant pleaded guilty, only 55 days had elapsed, well short of the 120-day statutory limit (see 725 ILCS 5/103-5(a) (West 2022)). Defendant did not affirmatively object to any of his counsel's assents to continuances, and any arguable objections he made personally involved too little time to affect any speedy-trial issue. Defendant could not argue that counsel's conduct was ineffective assistance, because counsel did file a speedy-trial demand early on and no speedy-trial violation was arguable from the record. Further, the trial court held that defendant waived his speedy-trial right by entering a valid plea of guilty. See *People v. Townsell*, 209 Ill. 2d 543, 545 (2004).

¶ 18 On defendant's third claim of ineffective assistance, trial counsel's alleged failure to investigate the possible defenses of accident and self-defense, the trial court found two fatal flaws. First, both defenses were refuted by the factual basis at the guilty-plea hearing and the police report, and neither of defendant's assertions was supported by a statement under oath from defendant or anyone else. Second, although defendant contended that trial counsel should have hired an expert to support these possible defenses, his contention was unsupported by any affidavits or even the names of possible expert witnesses.

¶ 19 Finally, the trial court noted that, at the guilty-plea hearing, defendant was duly admonished of his rights, told the trial court that he did not need any more time to talk to his counsel, and stated that he was pleading guilty knowingly and of his own free will. Thus, he did not make a substantial showing that counsel's deficient performance in any other respect induced him to plead guilty and accept the statutory minimum sentence on a single charge rather than elect to go to trial on that charge and numerous other felonies.

¶ 20    The trial court dismissed the amended petition. Defendant timely appealed.

¶ 21                                II. ANALYSIS

¶ 22    On appeal, defendant contends that the dismissal of his amended postconviction petition must be reversed, and the cause must be remanded, because (1) postconviction counsel filed a defective certificate of compliance with Rule 651(c) and the record does not prove compliance and (2) postconviction counsel provided unreasonable assistance, as she failed to amend the petition further to shape it into appropriate legal form.

¶ 23    We review *de novo* the second-stage dismissal of a petition under the Act. *People v. Suarez*, 224 Ill. 2d 37, 41-42 (2007). There is no constitutional right to counsel in a postconviction proceeding. *Id.* at 42. However, the Act entitles petitioners to a reasonable level of assistance. *Id.* To ensure that they receive reasonable assistance, Rule 651(c) provides (as pertinent here):

> "*** In a postconviction proceeding, the appellant or appellant's counsel shall, upon written request, be provided the postconviction report of proceedings and any relevant report of proceedings not previously provided to the appellant or appellant's counsel.
>
> The record filed in that court shall contain a showing, which may be made by the certificate of petitioner's attorney, that the attorney has [1] consulted with petitioner by phone, mail, electronic means or in person to ascertain his or her contentions of deprivations of constitutional rights, [2] has examined the record of the proceedings at trial, and [3] has made any amendments to the petitions filed *pro se* that are necessary for an adequate presentation of petitioner's contentions." Ill. S. Ct. R. 651(c) (eff. July 1, 2017).

¶ 24    Rule 651(c) requires substantial, not strict, compliance. *People v. Profit*, 2012 IL App (1st) 101307, ¶ 18. The filing of a Rule 651(c) certificate creates a rebuttable presumption that counsel has provided reasonable assistance. *People v. Addison*, 2023 IL 127119, ¶ 21. However, even if the

certificate does not substantially comply with the rule, the record as a whole may show that postconviction counsel complied with those requirements. *People v. Redmond*, 188 Ill. 2d 376, 380 (1999); *People v. Jennings*, 345 Ill. App. 3d 265, 271 (2003).

¶ 25    We address defendant's first contention: that counsel's certificate did not substantially comply with Rule 651(c). Defendant focuses on the difference between the language of what we have labeled [3] and the corresponding phraseology of counsel's certificate. The former required counsel to state that she "made any amendments to the petitions filed *pro se* that [were] necessary for an adequate presentation of petitioner's contentions." Ill. S. Ct. R. 651(c) (eff. July 1, 2017). Counsel's certificate stated that she "consulted with [defendant] in person *** to the extent necessary to adequately represent his contentions of error in the proceedings and deprivation of constitutional rights and thereafter filed an Amended Successive [*sic*] Post-Conviction Petition."

¶ 26    We acknowledge that counsel did not *explicitly* aver that she made any amendments that she deemed necessary to the adequate presentation of defendant's claims of error. However, from the certificate as a whole, in particular the paragraph quoted here, that averment is a safe inference. Counsel stated that (1) she consulted with defendant to the extent necessary to represent his claims and (2) she thereafter filed the amended petition. The natural inference is that she did not file the amended petition as a mere formality based only on what her client told her but took into account what was needed to shape his claims into a presentable form. Notably, postconviction counsel added numerous exhibits and affidavits to the *pro se* petition, so the amended petition itself is strong evidence that, whatever the formal deficiencies of the certificate, counsel satisfied her obligation to provide reasonable assistance (a subject we address more fully in discussing defendant's second issue on appeal.).

¶ 27　In *People v. Richardson*, 382 Ill. App. 3d 248 (2008), the defendant's postconviction counsel filed a certificate of compliance that, as pertinent here, stated that she prepared a supplemental petition that " 'augmented' " the defendant's *pro se* petition and that the supplemental petition " 'adequately complement[ed] [the defendant's] claims of deprivation of his constitutional rights.' " *Id.* at 251. On appeal, the defendant argued that the certificate was deficient because counsel did not certify that she " 'made any amendments *** necessary for an adequate presentation' " of his claims. *Id.* at 253. The appellate court disagreed with the defendant, holding that the language substantially complied with Rule 651(c). *Id*. at 257.

¶ 28　In *People v. Henderson*, 2025 IL App (2d) 240566-U, a decision of this court that we find persuasive, postconviction counsel's certificate of compliance stated that, after reviewing the record and consulting with the defendant, she advised him of her proposed amendments to his *pro se* petition, which she believed were necessary for an adequate presentation of [the defendant's] contentions." (Italics omitted). *Id.* ¶ 18. We held that the certificate substantially complied with Rule 651(c), because the language counsel used implied that "she prepared a supplemental petition *in order* to comply with her duty to make any necessary amendments to adequately present [the defendant's claims.]" (Emphasis in original.) *Id.* ¶ 34 (citing *Richardson*, 382 Ill. App. 3d at 257).

¶ 29　Although the specific phraseology in each case is different, *Richardson* and *Henderson* both support our conclusion that postconviction counsel filed a valid certificate of compliance with Rule 651(c). Therefore, defendant must rebut the presumption that she provided reasonable assistance. This brings us to defendant's second contention on appeal: that counsel did not do so.

¶ 30　Initially, we note the following principles. Postconviction counsel is required to investigate and properly present only those claims that the defendant has raised in his *pro se* petition. *People*

*v. Pendleton*, 223 Ill. 2d 458, 475 (2006). Therefore, counsel's performance cannot be found to violate Rule 651(c)'s requirement of reasonable assistance merely because counsel declined to raise claims not raised in the *pro se* petition. *People v. Collins*, 2021 IL App (1st) 170597, ¶ 39.

¶ 31    Further, counsel is not obligated to advance frivolous claims. "If amendments to a *pro se* postconviction petition would only further a frivolous or patently nonmeritorious claim, they are not 'necessary' within the meaning of the rule." *People v. Greer*, 212 Ill. 2d 192, 206 (2004).

¶ 32    Finally, "post-conviction counsel has no obligation under Rule 651(c) to locate witnesses not specifically identified by the petitioner or to conduct an investigation to discover the identit[ies] of witnesses who would provide evidence to support a claim in the post-conviction petition." *People v. Moore*, 189 Ill. 2d 521, 542 (2000).

¶ 33    With these principles in mind, we examine postconviction counsel's assistance on the three claims defendant raised.

¶ 34    The first claim is that defendant's trial counse performed unreasonably in failing "to identify what that discovery was or how the failure to share the discovery influenced [defendant's] decision to plead guilty." Defendant argues that *Walker* supports his position. The State responds that *Walke*r actually supports its position. We do not find *Walker* dispositive either way.

¶ 35    In *Walker*, the defendant, who was convicted on guilty pleas of two offenses, filed a postconviction petition alleging that, as to one conviction, trial counsel had been ineffective for failing to share and review discovery documents with him. *Walker*, 2019 IL App (3d) 170374, ¶¶ 1, 7. The trial court summarily dismissed the petition. *Id.* ¶ 10.

¶ 36    On appeal, the defendant argued that his petition should have survived summary dismissal because it stated an arguable claim of ineffective assistance of trial counsel. *Id.* ¶ 12. The appellate court affirmed. It noted initially that, although decisions about which discovery materials to share

with the defendant are matters of trial strategy and therefore must be accorded a strong presumption of reasonableness, the presumption may be rebutted " 'where counsel's decisions appear to be so irrational that no reasonably effective defense attorney would pursue such a strategy.' " *Id.* ¶ 18. The appellate court observed that the defendant might have made a sufficient allegation to this effect by showing that "counsel withheld discovery information that cast doubt on the State's ability to prove him guilty or was otherwise particularly relevant to his decision to plead guilty." *Id.* However, the defendant did not do so, as he did not attach any documentation except one police report that was consistent with the factual basis for his guilty plea and thus undermined his claim that he would not have pleaded guilty had counsel shared discovery with him. *Id.* ¶ 20. Further, the defendant did not allege what information counsel had withheld from him. *Id.* ¶ 21.

¶ 37    *Walker* provides a compelling basis to hold that defendant's petition's first allegation of ineffective assistance was insufficient to survive the State's motion to dismiss. That, however, is not the precise issue here. The issue is whether defendant has rebutted the presumption that postconviction counsel performed reasonably in not strengthening the allegation to the point where it would have made a substantial showing that trial counsel was ineffective. As we have held that trial counsel's valid Rule 651(c) certificate raised the presumption that her assistance on this issue was reasonable, defendant must show otherwise. He fails to do so.

¶ 38    Defendant has not overcome the presumption that the reason that postconviction counsel did not attach further documentation for the claim is that she "made a concerted effort to obtain affidavits [or other documents] in support of the [claim], but was unable to do so." *Johnson*, 154 Ill. 2d at 241. Defendant only speculates that postconviction counsel would have found some discovery matter so compelling that it would have induced defendant to refuse a generous plea

bargain that spared him the likelihood of a much longer sentence after going to trial against extremely strong evidence, such as inculpatory testimony from Musgray, Stokes, and the police officers to whom defendant admitted shooting Musgray as she was leaving the apartment, which occurred *after* they broke off the altercation indoors in which she allegedly attacked him. Defendant also made his own inculpatory statements to the police.

¶ 39    Turning to the amended petition's second claim, that his trial counsel was ineffective for failing to shore up his claim of a speedy-trial violation, we note that defendant is similarly unable to engage in more than speculation in the face of evidence to the contrary. Defendant contends that postconviction counsel should have addressed two "procedural bars" to the claim: (1) that defendant waived his claim by pleading guilty and (2) that appellate counsel was ineffective for failing to raise a speedy-trial issue on direct appeal.

¶ 40    We may swiftly dispose of the latter alleged failing. As we dismissed defendant's direct appeal summarily because he failed to satisfy the prerequisite for an appeal (a timely motion to withdraw his guilty plea in the trial court), appellate counsel could not even have *raised* the merits of a speedy-trial claim. (That explains his successful motion to withdraw.) Thus, postconviction counsel performed quite reasonably in refusing to make an argument that was patently absurd. We also note that defendant did not challenge trial counsel's failure to file a motion to withdraw the plea, nor did he challenge his appellate counsel's failure to challenge trial counsel's failure to withdraw the plea. Moreover, even had it been legally possible for appellate counsel to raise such a claim, it would make no difference unless the speedy-trial issue was reasonably likely to prevail. Thus, we turn to the first alleged failing as to defendant's speedy-trial claim.

¶ 41    Defendant does not address the trial court's correct conclusion that the speedy-trial claim was inherently nonmeritorious, not because of any lack of attachments in support of it but because

facts of record could not in good faith be contradicted by any attachments:(1) defendant's trial counsel made prompt demand for speedy trial, (2) under settled law, almost none of the applicable time was chargeable to the State, and (3) under settled law, defendant's guilty plea waived his right to a speedy trial. Defendant now argues that postconviction counsel could have alleged that "due to the other constitutional errors [unspecified by defendant], the plea was not knowingly and voluntarily entered in the first place." In effect, defendant now argues that postconviction counsel could have somehow saved the speedy-trial claim by alleging that the guilty plea itself was invalid, a wholly different argument, due to some unspecified "constitutional errors" that would have negated all the evidence that supported the trial court's finding that the plea was voluntary. Of course, the strongest such evidence is defendant's statement, after being properly admonished, that he was pleading guilty of his own free will and that he did not need more time to consult further with his counsel. Other strong evidence is found in the combination of inculpatory evidence (noted earlier) and favorable plea-offer terms (also noted earlier) that made going to trial extremely unattractive to defendant.

¶ 42    Defendant has not overcome the presumption that postconviction counsel performed reasonably in her treatment of the speedy-trial issue. Indeed, postconviction counsel was not obligated to raise a frivolous claim, much less make amendments that would be futile. See Greer, 212 Ill. 2d at 206. If anything, defendant's petition received better treatment than warranted when postconviction counsel elected not to eliminate the speedy-trial claim altogether. Even without the presumption of reasonableness created by the filing of the Rule 651(c) certificate, the record as a whole shows that counsel's treatment of defendant's second claim was reasonable.

¶ 43    We turn to postconviction counsel's performance on the third claim: that defendant's trial counsel was ineffective for failing to investigate potential affirmative defenses of accident and

self-defense and for failing to obtain the opinion of an expert to support these defenses. The amended petition alleged conclusionally that, based solely on *part* of what defendant told the police, defendant "would have been poised to succeed at trial and or [*sic*] secure a lesser sentence in a negotiated plea." We note that defendant cites only defendant's conclusional affidavit (which he admits was inadequate) and the police report's statement that "he was inside the apartment and that the victim had attacked him." He omits the very next sentence in the report, which states that defendant told the police that "as the victim was leaving the apartment, maybe going to the neighbors, [defendant] took out the handgun and fired it at the victim, shooting her." It also omits his admission to the police that, after the shooting, he threw the gun away and tried to hide in his apartment. In any event, defendant's argument is unavailing.

¶ 44 Defendant correctly notes that the amended petition "does not identify any potential expert, explain how that potential expert opinion could have supported a self-defense claim, nor what new evidence would have been obtained through an investigation." The foregoing supports the trial court's dismissal of the amended petition on the merits, but not defendant's appeal.

¶ 45 Defendant's argument founders on several rocks. First, based on the evidence of record, especially the police report, a claim of self-defense or accident would have been futile, or at least so weak that postconviction counsel could reasonably have omitted it from the amended petition. This would be so even had counsel persuaded defendant to file a new affidavit swearing to a claim of accident or self-defense, because the claim still would have been refuted by the record. Second, defendant can only assert baldly that a possible self-defense or accident defense would have induced him to go to trial and spurn the plea offer. Third, defendant has not overcome the strong presumption that counsel "made a concerted effort to obtain affidavits [or other documents] in support of the [claim], but was unable to do so." *Johnson*, 154 Ill. 2d at 241. Finally, defendant

forgets that postconviction counsel has no obligation to locate witnesses not specifically identified by the defendant or to conduct an investigation to discover the identity of witnesses, including expert witnesses to support the petition. *Moore*, 189 Ill. 2d at 542. Defendant cannot prove unreasonable assistance merely by citing postconviction counsel's decision not to go on "a fishing expedition for evidence." *Id.* Defendant's third claim of unreasonable assistance, like the first two, is without merit.

¶ 46                                    III. CONCLUSION

¶ 47    For the reasons stated, we affirm the judgment of the circuit court of Kane County

¶ 48    Affirmed.